## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:09cv466

| | | |
|---|---|---|
| LEE B. MARTINDALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of Referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Judgment on the Pleadings.[1] Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff filed an application for a period of disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff's claim was denied both

---

[1]    Inasmuch as plaintiff has moved under Rule 56, Fed.R.Civ.P., and defendant has moved under Rule 12, the court will apply the Rule 56 standard.

initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). The first hearing was conducted before a separate ALJ, where no testimony was taken, and the record was held open for submission of more evidence. Tr., at 457-61. After conducting the final hearing, another ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision was affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether

there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV.    Substantial Evidence

### A.    Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B.    Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.    An individual who does not have a "severe impairment" will not be found to be disabled;

c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.    If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.    If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

C.    **The Administrative Decision**

On March 18, 2009, the ALJ issued his written decision in which he found that plaintiff was not disabled during his alleged period of disability because he retained the residual functional capacity (hereinafter "RFC") to perform work existing in significant numbers in the national economy. Tr., at 22-36. Relevant to the issues raised in this review, the ALJ found as follows:

Taken together, this evidence shows that claimant's pain and subjective symptoms are of mild to moderate severity, are responsive to conservative treatment and are not severe enough to restrict him from performing simple, routine, repetitive light work, avoiding concentrated exposure to hazards.

\* \* \*

In sum, the above residual functional capacity assessment is supported by objective evidence that seizures are controlled with medication, current symptoms of seizures are likely related to alcohol and benzoid withdrawal and characterized by stuttering speech, incoordination [*sic*] of right arm, and mild ataxia, but he does not lose consciousness; his ability to care for his physically disabled wife including daily activities such as household chores, making grocery list [*sic*], running errands and repairing small electronics; mental status exam that demonstrates only mild limitations in adaptive functioning, and the overall lack of credibility of the claimant as evidenced by his long standing substance abuse, his ongoing use of alcohol despite the adverse affects on [his] seizure disorder, and observations by medical providers of claimant's lack of motivation.

Tr., at 33-34.

### D.  Discussion

### 1.  Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

I.    The ALJ Erred at Step Two (and Later Steps in the Sequential Evaluation) in Failing to Consider Cognitive Disorder as a Severe Impairment;

II.   The ALJ Erred in Rejecting the Opinions of the Examining Psychologist and the Treating Nurse Practitioner;

III.  The ALJ Erred in Rejecting the Plaintiff's Credibility; and

IV.   The ALJ's RFC in Not Supported by Substantial Evidence

Plaintiff's assignments of error will be discussed *seriatim*.

## 2.    First Assignment of Error

Plaintiff first contends that the ALJ Erred at Step Two of the sequential evaluation process (and in later steps) in failing to consider plaintiff's cognitive disorder as a severe impairment. Severity of an impairment is a threshold determination:

> An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience.

Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)(citations omitted). Put another way, a severe impairment is one which significantly limits an individual's ability to do basic work activities. 20 C.F.R. § 404.1520(c).  Plaintiff contends that the ALJ erroneously omitted his cognitive impairment from impairments the ALJ found to be severe.  Plaintiff points to evidence of a history of traumatic head injury, findings in CT and MRI results of white matter changes, mild to moderate cerebral atrophy, and neurocognitive testing consistent with cognitive disorder.  Plaintiff's Memorandum (#9-1), at 10.

The ALJ's non-inclusion of cognitive disorder finds support in the medical evidence of record.  While plaintiff points to Dr. Hinnant's opinion that plaintiff had

a cognitive disorder,[2] other substantial evidence of record supports a different result. Psychiatrist Dr. Anthony Carraway, upon whom the ALJ relied in his decision, also examined plaintiff and found that plaintiff's intellectual functioning was low average to somewhat below average, but did not diagnose a cognitive impairment or thought disorder. Tr., at 358, 359. In December 2008, plaintiff was observed to be of average intellectual functioning, with a memory within normal limits. Tr., at 386. Even Dr. Hinnant, on whom plaintiff relies, found that plaintiff's intellectual functioning was in the low average range, and that plaintiff's problems with anxiety caused his limitation in concentration. Tr., at 26-27, 321.

Plaintiff further cites to evidence that he was dependent on care from his wife as evidence that he had a cognitive disorder; however, the ALJ found that this assertion of dependence was not credible where plaintiff admitted that it was he who helped his alleged disabled wife around the house. Tr., at 32. While plaintiff argues that the ALJ used plaintiff's "poor judgment as a credibility factor against him," Plaintiff's memorandum (#9-1), at 10, it appears, instead, that the ALJ noted plaintiff's accuracy on judgment testing. Tr., at 27, 31.

---

[2]    Cognition is defined as a "[g]eneric term embracing the quality of knowing, which includes perceiving, recognizing, conceiving, judging, sensing, reasoning, and imagining." *Stedman's Medical Dictionary* (25th Ed.).

Plaintiff also points to the results of CT scans and MRIs as supporting the presence of a cognitive disorder. While plaintiff accurately relates that these tests showed changes in plaintiff's brain, state agency physicians reviewed such data as well as the results of psychological testing and questioned the possibility of an organic mental impairment and determined that plaintiff was able to perform unskilled work. Substantial evidence supports the ALJ's assessment at step two that the evidence did not establish a cognitive impairment and that, to the extent a cognitive impairment was present, it presented no limitations on plaintiff's ability to perform unskilled work. Thus, the ALJ properly did not find a cognitive disorder to be a severe impairment. See Evans v. Heckler, supra.

### 3.    Second Assignment of Error

In his second assignment of error, plaintiff contends that the ALJ erred in rejecting the opinions of the examining psychologist and the treating nurse practitioner.

### A.    Dr. Hinnant

As to the opinions of Dr. Hinnant, plaintiff first argues that ALJ improperly rejected such opinions because plaintiff was seen by such physician at counsel's request. Plaintiff's Memorandum (#9-1), at 14. Review of the decision, however, reveals that the ALJ also rejected Dr. Hinnant's opinion on a more substantive basis,

finding that it was not supported by and was contrary to other evidence of record.  Tr.,

at 33-34.  More precisely, the ALJ found, as follows:

> ... the conclusions of [Dr.] Donald Hinnant, performed in April 2007, are not
> consistent with the longitudinal evidence of record.  This exam was scheduled
> by claimant's counsel and the examiner was understandably sympathetic to the
> claimant's subjective allegations.  His assessment that the claimant exhibits
> marked limitations in social functioning is directly refuted by the evidence of
> record that indicates that claimant shops, runs errands, keeps in touch and
> socializes with friends and neighbors, and attends church on a regular basis.
> Similar[ly], his conclusion that claimant exhibits marked limitations in memory
> and maintaining adequate concentration, persistence, and pace is refuted by his
> ability to accurately perform serial 7's, spell the words *orange* and *world*
> correctly backwards, and perform hobbies such as building model boats and
> fixing things like small electronics.
>
> * * *

Id.  Thus, the ALJ did not reject Dr. Hinnant's opinions simply because plaintiff was

referred to him by counsel.  By noting such referral, the ALJ was doing little more

than noting that Dr. Hinnant was not a treating source.  Unlike a doctor who is seen

for purposes of litigation, a treating physician is a physician who has observed the

plaintiff's condition over a prolonged period of time.  Mitchell v. Schweiker, 699 F.2d

185, 187 (4th Cir.  1983).  Even the opinion of a treating physician is only entitled to

controlling weight if it is supported by "clinical and laboratory diagnostic techniques,"

and is not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors
> listed below" and in paragraphs (d)(3) through (5) used to determine the
> amount of weight to be given it are (1) the length of the treatment
> relationship and the frequency of examination ("the longer a treating
> source has treated you and the more times you have been seen by a

treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001)(Horn, C.M.J.).

Indeed, the regulations cited by the court in Pittman require the ALJ to consider the

nature of the relationship between doctor and patient in determining the weight to be

given such opinions.  Thus, it was not only appropriate but required for the ALJ to

note the nature of the relationship between Dr. Hinnant and plaintiff.

The court can find no error, and finds that the ALJ's decision in weighing such

evidence to be appropriate inasmuch as he cited the record evidence that informed his

conclusions, and is otherwise supported by substantial evidence of record. While Dr.

Hinnant's testing apparently showed that plaintiff had marked limitations, those tests

are at odds with the rest of the rest of the record attributing plaintiff's reduced

functioning to withdrawal from substances, or failure to take his seizure medication,

and his self reported daily activities.  See Tr., at 323, 357, 360, 391, and 487-488.

Plaintiff demonstrated normal mental status examinations, was alert and was oriented times three, or showed only mild symptoms. Tr., at 31, 202, 207, 269, 273, 274, 275, 276, 267, 269, 370, 372, 373, 375, 376, and 386. Dr. Carraway, who also tested plaintiff, found that plaintiff was capable of simple, repetitive tasks, as is required for unskilled work. Tr., at 359.

## B.    Nurse Practitioner Masters

Plaintiff also contends that the ALJ improperly disregarded the opinion of Nurse Practitioner Masters.  What plaintiff fails to mention, however, is that opinions of nurse practitioners are not probative as nurse practitioners are not "acceptable medical sources," but are instead considered to be "other sources."  Under 20 C.F.R. § 404.1513(d), a plaintiff is, however, permitted to submit evidence from "other sources":

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to--
>
> (1)    Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
>
> (2)    Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
>
> (3)    Public and private social welfare agency personnel; and

(4)     Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

Id.  In Morgan v. Barnhart, 2005 WL 1870019 (4th Cir. 2005),[3] the Court of Appeals for the Fourth Circuit addressed what consideration an ALJ must give to corroborative lay opinions submitted in accordance with Part 404.1513(d).  There, the appellate court, while not reaching the issue (making such *dicta*), agreed that an ALJ could not simply discredit such lay evidence based on inherent familial bias; instead, the appellate court found that the ALJ, implicitly and properly, discredited such lay opinions as not consistent with the medical record and the functional capacity evaluation.  Id., at **7.

An ALJ is to weigh the opinions from sources who are not acceptable medical sources in accordance with the following factors: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source  explains the opinion; (5) whether the source has a speciality or area of expertise related to the individual's impairment(s);

---

[3]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

and (6) any other factors that tend to support or refute the opinion. SSR 06-3p. <u>See</u>

<u>Pittman v. Massanari</u>, <u>supra</u>.

Review of the ALJ's decision reveals that he fully complied with the

regulations in considering the opinions of Nurse Practitioner Masters:

> I do not find Tassie Masters, A.N.A., . . . statements as to the claimant's limitations to be probative in determining his adaptive limitations. {her] statements that the claimant is disabled are opinions about an issue reserved to the Commissioner . . . .However, the opinions may not be ignored. In this case, .neither Ms. Masters nor Dr. Hinnant's conclusions are consistent with the longitudinal evidence of record.

> Treatment notes of Ms. Masters dated February 2, 2009, in which she describes the claimant as being in [*sic*] almost "catatonic"since his hospitalization of November 30, 2008 is inconsistent with other medical providers who examined the claimant during this same period of time. Ms. Masters states that claimant's physical condition has declined significantly and he moves in slow motion and appears barely awake. Ms. Masters attributes these symptoms to "adverse reaction to medication" or "status epilecticus has brought about negative permanent changes" (Exhibit 23F).

> The observations and conclusions of Ms. Masters are directly refuted by two other medical examinations done after the claimant's November 2008 hospitalization and when he was on the same medications as he was when she examined [him] in February 2009.
> * * *

Tr., at 33. The ALJ properly considered the opinions of Nurse Practitioner Masters

and properly cited and explained the evidence of record which refuted her

conclusions. Finding the ALJ's determination to be supported by substantial evidence of record, the undersigned finds no merit to this assignment of error.

### 4. Third Assignment of Error

Plaintiff next contends that the ALJ erred in finding the plaintiff's subjective complaints to not be credible. The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in <u>Hyatt v. Sullivan</u>, 899 F.2d 329 (4th Cir. 1990)(<u>Hyatt III</u>), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." <u>Id</u>., at 336. A two-step process for evaluating subjective complaint was developed by the Court of Appeals for the Fourth Circuit in <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioners relevant rulings and regulations. <u>See</u> 20 C.F.R § 404.1529; SSR 96-7p.[4]

Step One requires an administrative law judge (hereinafter "ALJ") to determine whether there is "objective medical evidence showing the existence of a medical

---

[4]     "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. Id., at 594; see also 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

Plaintiff takes issue with the ALJ's credibility determinations. In Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility determinations – and therefore sometimes make negative determinations

– about allegations of pain or other nonexertional disabilities. . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations omitted)).  Indeed, credibility determinations come into play as early as the second step of the sequential evaluation process, the importance of which has been explained by the Commissioner:

> The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision.

 S.S.R. 96-7p (statement of purpose).

In this case, the ALJ found plaintiff's complaints of disabling seizures to not be entirely credible where; (1) the objective medical evidence did not support plaintiff's allegations; (2) his seizures were controlled with medication and abstinence from alcohol; and (3) there were gaps in his neurological treatment.   Tr., at 30-34. The ALJ also noted that plaintiff did not mention his seizures to Dr. Hyman, and that Dr. Hyman noted plaintiff's lack of motivation for improvement.  Tr., at 32.

Substantial evidence supports the ALJ's assessment of plaintiff's credibility. As to the persistence and intensity of his symptoms, the medical record reflects that plaintiff responded to medication for his seizures. Tr., at 366. Indeed, the record reflects that plaintiff only experienced *grand mal* seizures in response to withdrawal from substances, alcohol or Xanax, or noncompliance with his medication. Tr., at 25, 31, 311, 384, 387, 391, and 393. In November 2008, plaintiff presented to the emergency room with a seizure in reaction to alcohol and Xanax withdrawal. Tr., at 391-402. He was specifically noted to have long periods free of seizures, especially when combined with abstinence from alcohol. Tr., at 393.

In determining credibility, the ALJ also found that there were large gaps in plaintiff's treatment, specifically, large gaps in visiting a doctor for a condition plaintiff contends is disabling. Tr., at 26. Lack of treatment is relevant to the weight afforded opinion evidence. Nester v. Barnhart, 2005 WL 1083439, at *5 (W.D.Va. 2005). The record indicates that plaintiff did not present to treating neurologist Dr. Palay for the nine months between August 2006 and May 2007. Tr., at 347). While plaintiff argues that the ALJ erroneously observed that plaintiff also did not present to Dr. Palay between December 2007 and November 2008, a note from Dr. Palay specifically provided that he had not seen plaintiff since December 2007. Tr., at 343. (There is evidence that plaintiff presented in September 2008.) Plaintiff does correctly

note that he could have well been following Dr. Palay's prescribed course of treatment during any period of lapse.

The ALJ also noted that while Dr. Hyman treated plaintiff for pain, but that such physician failed to note any seizure activity, observing that Plaintiff was not working "due to some sort of closed head injury due to [a motor vehicle accident] back in 1980." Tr., at 32. By not mentioning seizures, such lack of notation can be probative of plaintiff's credibility. Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility.") Here, it is well within reason to diminish a plaintiff's credibility where he fails to mention to a treating physician a condition which he considers to be disabling. Significantly, Dr. Hyman also observed that plaintiff did "not want to work and if lack of motivation were a diagnosis[,] that would be his major diagnosis." Tr., at 200 & 202. While plaintiff attempts to argue that the doctor's opinion could be read as a lack of functionality due to the lack of motivation, the ALJ's interpretation is both reasonable and dictated by the plain and surprisingly blount language of Dr. Hyman's assessment. The ALJ properly included Dr. Hyman's observations in his credibility assessment.

As to plaintiff's contention that his anxiety was disabling, the record reflects that medication controlled plaintiff's symptoms. See Tr., at 31, 367, 369, 370, 372, 373, 374, 375, 376, 377, & 384. Plaintiff contends that the medication did not have such an impact, and that the ALJ should have accounted for the need to increase the dosage of plaintiff's Risperda. Plaintiff's Memorandum, at p. 16. Whether a medication is increased or decreased is a little relevance; what is important is whether the medication is effective in treating what plaintiff contends to be a disabling condition. The Social Security Regulations provide

> In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled, or if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. 404.1530(a)-(b). In addition to the objective medical evidence, the ALJ's evaluation of a plaintiff's credibility must include the "type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s) . . . ." 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The fact that a physician increases or decreases dosage, standing alone, does not undermine the ALJ's credibility assessment where the record demonstrates that plaintiff responded consistently well to the medication. While side effects of medication are also important to consider, the ALJ properly discredited the only suggestion of ill effects

as reported by Nurse Masters. While the absence of any other report of adverse side effects is telling, perhaps most striking is plaintiff's own testimony to having no side effects from medications.

> Q. Do you have any side effects from the medications you take?
>
> A. No, I don't.

Tr., at 490. The court finds no merit to this assignment of error.

Plaintiff also takes issue with the ALJ's consideration of plaintiff's decision to leave a FEMA job and then to collect unemployment as evidence weighing against his credibility. Plaintiff's Memorandum (#9-1), at 17. The Court of Appeals for the Fourth Circuit has long held that failure to find another job after one job ended properly can be considered in determining credibility. Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970). As to accepting unemployment benefits, plaintiff argues that the ALJ improperly considered such in discrediting plaintiff's testimony because North Carolina permits the collection of such benefits based on a disabling condition. The North Carolina statute governing collection of unemployment benefits currently[5] provides as follows:

---

[5] This statute has been amended a number of times since plaintiff collected benefits. The court has reviewed each amendment and cannot find that the substance of such provision was different in 2005.

> Where an individual is discharged or leaves work due solely to a
> disability incurred or other health condition, whether or not related to the
> work, he shall not be disqualified for benefits if the individual shows:
>> a. That, at the time of leaving, an adequate disability or
>> health condition of the employee, of a minor child who is
>> in the legally recognized custody of the individual, of an
>> aged or disabled parent of the individual, or of a disabled
>> member of the individual's immediate family, either
>> medically diagnosed or otherwise shown by competent
>> evidence, existed to justify the leaving; and
>
>> b. That, at a reasonable time prior to leaving, the individual
>> gave the employer notice of the disability or health
>> condition.

N.C.Gen.Stat. § 96-14(1) (2011). While plaintiff argues that "Plaintiff collected them based on his disabling condition," he fails to cite to the evidence in the record that supports such statement. See L.Cv.R. 7.1(C)("Factual contentions shall be supported as specifically as possible by citation to exhibit number and page.") Instead, the ALJ found that "[t]reatment records dated April 7, 2005 note that job with FEMA is complete and he is currently not working." See Tr., at 25 (footnote omitted) & 207. There is absolutely no indication in Dr. Hyman's notes to support plaintiff's contention that he left FEMA due to disability; rather, the only evidence the court can

find is that he left due to completion of the job.  Thus, the exception cited by plaintiff under North Carolina law would appear to be inapplicable.[6]

Plaintiff also takes issue with the ALJ's findings concerning plaintiff's activities of daily living, especially his credibility determination based on findings that plaintiff helped his disabled wife and performed daily activities such as shopping, running errands, attending church, building boat models, performing household repairs, and raking.  Plaintiff's Memorandum (#9-1), at 18.

In accordance with the teachings of the Court of Appeals for the Fourth Circuit in Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986), the undersigned must find that the ALJ properly considered plaintiff's activities of daily living and that plaintiff's assignment of error is without merit.  See also 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i).  The nature of a claimant's symptoms, the effectiveness of any medication he is taking, and his daily activities are all relevant factors when considering subjective symptoms such as pain.  Id.

Such consideration of daily activities is precisely the type of evaluation required under current case law. In considering an almost identical method of evaluating pain in Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), the late K. K. Hall, Circuit Judge,

---

[6]        While the court has pointed out plaintiff's oversight in failing to reference the evidence supporting such assertion, the court appreciates counsel's vigor in argument.  The court must point out that plaintiff's error is slight when compared to the Commissioner's oversight in not addressing the supposed error.

in announcing and concurring in the judgment of the Court of Appeals for the Fourth

Circuit, held:

> This refreshing mode of analysis is precisely what I believe our cases have been striving for.  The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

Id., at 927. In accordance with Mickles, the ALJ properly discredited plaintiff's

subjective complaints of pain. Substantial evidence supports the ALJ's determinations.

## 5.      Fourth Assignment of Error

Finally, plaintiff's contends that the ALJ's RFC determination is not supported

by substantial evidence.   The ALJ is solely responsible for determining RFC of a

claimant.  20 C.F.R. § 404.1546(c).  In determining RFC, the ALJ must consider the

functional limitations and restrictions resulting from the claimant's medically

determinable impairments.    S.S.R.  96-8p.   Inasmuch as RFC is determined

immediately before the fourth step of the sequential evaluation process, the burden is

on the claimant to establish that he or she suffers from a physical or mental

impairment which limits functional capacity.  Hall v.  Harris, 658 F.2d 260, 264 (4th

Cir.  1981).

When an ALJ finds at least one severe impairment, all impairments, both severe

and  non-severe,  are  considered  in  assessing  a  claimant's  RFC. 20  C.F.R.  §§

404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ found that plaintiff had other

severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." <u>Pompa v. Comm'r of Social Security</u>, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003).[7]  In order for an impairment to be severe it must significantly limit a plaintiff's ability to perform basic work activities. <u>See</u> 20 C.F.R. § 404.1520(c). Here, plaintiff has failed to identify how any of the impairments he contends were severe resulted in work-related limitations greater than those found by the ALJ during the relevant time period. Accordingly, his claim of error must fail.

Plaintiff specifically argues that the ALJ failed to include in his decision more specific limitations with respect to plaintiff's mental RFC.  Plaintiff's Memorandum (#9-1), at 19.  Plaintiff contends that he had a limitation in interacting with his coworkers and supervisors, and that the ALJ should have included that in his assessment.   Again, the source of such proposed limitations is evidence which the ALJ specifically did not fully credit, to wit, the opinions of  Dr. Hinnant and Nurse Practitioner Masters.  They concluded that plaintiff had problems interacting with coworkers or others; however, not only is the record devoid of supporting evidence, the evidence support just the opposite finding. Tr., at  323.  Specifically, plaintiff told

---

[7]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Dr. Carraway that he had no difficulty getting along with others, and Dr. Carraway determined plaintiff had only mild limitations in interacting with the public, coworkers, and supervisors. Tr., at 357, 360

Finally, plaintiff takes issue with the RFC assessment based on failure to account for his back and knee conditions. Again, plaintiff fails to point out what evidence of record supports his assertion of additional limitations based on these conditions. Instead, there is substantial evidence that would support the inclusion of no further limitations based on these conditions inasmuch as in October *2008*, plaintiff was moving furniture which led to knee and back pain. Tr., at 361. Further, the ALJ noted plaintiff's use of a cane at the hearing, but recognized such device was not prescribed. Tr., at 31. Plaintiff and his wife also admitted he hauled trash. Tr., at 485, 492. Plaintiff testified that his worst problems were his seizures, Tr., at 468, and that he no longer took any pain medication. Tr., at 490. Substantial evidence supports the ALJ's RFC assessment.

### E.     Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales,

supra; <u>Hays v. Sullivan</u>, <u>supra</u>. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>, the undersigned must recommend to the district court that plaintiff's Motion for Summary Judgment be denied, the Commissioner's Motion for Judgment on the Pleadings be granted, and that the decision of the Commissioner be affirmed.


## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)   the decision of the Commissioner, denying the relief sought by plaintiff, be **AFFIRMED**;

(2)   the plaintiff's Motion for Summary Judgment (#9) be **DENIED**;

(3)   the Commissioner's Motion for Judgment on the Pleadings(#11) be **GRANTED**; and

(4)   this action be **DISMISSED**.


## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be

filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

Signed: February 24, 2011

Dennis L. Howell
United States Magistrate Judge